# IN THE COURT OF APPEALS OF IOWA

No. 15-1028
Filed September 23, 2015

**IN THE INTEREST OF A.N., M.N., AND A.B.,**
**Minor Children,**

**A.B., Mother,**
**Appellant,**

**S.N., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Pottawattamie County, Craig M. Dreismeier, District Associate Judge.

A mother and a father appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Roberta J. Megel of the State Public Defender Office, Council Bluffs, for appellant father.

Sara Benson of Benson Law, P.C., Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, Kathryn K. Lang, Assistant Attorney General, Matthew Wilbur, County Attorney, and Eric Strovers, Assistant County Attorney, for appellee State.

Marti Nerenstone, Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

The mother appeals the termination of her parental rights to her children, A.N., M.N., and A.B. The father appeals the termination of his parental rights to his children, A.N. and M.N.[1] Reviewing their claims de novo, *see In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014), we affirm.

In determining whether parental rights should be terminated under Iowa Code chapter 232 (2015), the juvenile court "follows a three-step analysis." *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Step one requires the court to "determine if a ground for termination under section 232.116(1) has been established" by the State. *See id.* If the juvenile court finds grounds for termination, the court moves to the second step of the analysis: deciding if the grounds for termination should result in a termination of parental rights under the best-interest framework set out in section 232.116(2). *See id.* at 706-07. Even if the juvenile court finds "the statutory best-interest framework supports termination of parental rights," the court must proceed to the third and final step: considering "if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *See id.* at 707.

In December 2013, the children were removed from the mother's home and subsequently adjudicated children in need of assistance (CINA). The children were first placed in a foster family home. Later, in January 2015, the children were placed with their maternal grandmother. A petition to terminate parental rights was filed in February 2015, and came on for hearing in May 2015. The factual details underlying the removal, adjudication, and termination are

---

[1] The father of A.B. does not appeal the termination of his parental rights to A.B.

spelled out in full in the juvenile court's thorough twenty-one page termination-of-parental-rights order. After our de novo review of the record, we adopt as our own the juvenile court's findings of fact. To repeat those facts here would serve no useful purpose, particularly since termination of parental rights cases are so fact specific.

The juvenile court cited six independent ground for termination under Iowa Code section 232.116(1): paragraphs (b) (abandonment); (d) (adjudicated CINA for physical or sexual abuse or neglect, and the circumstances continue despite receipt of services); (e) (adjudicated CINA and removed from the parents' care for a period of at least six consecutive months, and parents have not maintained significant and meaningful contact with the child during the previous six consecutive months); (f) (age four or older, adjudicated CINA and removed from the parents' care for the last twelve consecutive months, and cannot be returned to the parents' custody at the time of the termination hearing); (h) (age three or younger, adjudicated CINA and removed from the parents' care for six of the last twelve months, and cannot be returned to the parents' custody at the time of the termination hearing); and (i) (adjudicated CINA for physical or sexual abuse or neglect, the abuse of neglect posed a significant risk to the child's life, and the receipt of services would not correct the conditions which led to the abuse or neglect within a reasonable period of time). The mother and the father challenge the termination of their parental rights as to all sections relied on by the juvenile court.

"On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *See D.W.*, 791

N.W.2d at 707. After reviewing the record in this case de novo, we conclude grounds for termination exist under section 232.116(1)(f) as to both parents.

As mentioned above, under that paragraph, termination may be ordered when there is clear and convincing evidence a child age four or older, who has been adjudicated in need of assistance and removed from the parent's care for the last consecutive twelve months, cannot be returned to the parent's custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f). Although the mother and father assert "the State did not prove by clear and convincing evidence all four prongs of this code section were met," they make no argument the first three prongs were not proved. In any event, there can be no real dispute the first three prongs of section 232.116(1)(f) have been met—at the time of termination, A.N., M.N., and A.B. were all four years old or older,[2] adjudicated CINA, and had been out of the mother's and father's custody for the last consecutive twelve months. *See id.* § 232.116(1)(f)(1)-(3). So, their claim really implicates only the fourth element, *see id.* § 232.116(1)(f)(4) ("There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents.").

---

[2] A.N. was three years of age when the petition to terminate parental rights was filed, but turned age four a few days before the hearing. The age of a child is determined as of the last day of the termination hearing. *See In re J.A.*, No. 13-0889, 2013 WL 5758054, at *3 (Iowa Ct. App. Oct. 23, 2013). Although the juvenile court found A.N. to be four years of age at the time of the hearing in its findings of fact, it applied section 232.116(1)(h) as to A.N in terminating the parental rights. Section 232.116(1)(h) requires that the court find the child in issue is three years of age or less. Under these facts and circumstances, the appropriate statutory section is 232.116(1)(f); the juvenile court's reference to section 232.116(1)(h) is clearly a typographical error, which is harmless given our de novo review. *See, e.g.*, *In re D.L.C.*, 464 N.W.2d 881, 883 (Iowa 1991) (noting the juvenile court's error was harmless in light of the de novo review of the appellate court).

The mother contends "the children could eventually be returned to her care now that she [is] at the Lydia House."[3] At the termination hearing the mother was asked, "Do you want the children placed back with you today?" The mother responded, "No." When asked "Why not?" the mother answered, "I don't think I'm stable enough. I don't think I have the proper resources. I think . . . a proper goal, like a month or so, I think, I would be more stable mentally and physically." The mother testified she had been using methamphetamine daily when she entered the Lydia House in early April 2015. She left the house about a week or two before the termination hearing. Because she was homeless upon leaving Lydia House, the mother wandered, went to a friend's house, and used methamphetamine and marijuana. She last used methamphetamine about a week before the termination hearing, and used marijuana less than a week before the hearing. The mother then returned to Lydia House about two days before the hearing. It is clear from the evidence that the children could not be returned to the mother at the time of the hearing.

The father contends "the children could have been returned to his care when he [will be] released from Nebraska in December 2015." At the time of the termination hearing the father was incarcerated at the Omaha Correctional Center. He testified his discharge date was December 14, 2016, but that he expected to be released on parole December 14, 2015. He testified he would be able to resume care of the children two months after his release on parole. It is clear from the evidence the children could not be returned to their father at the time of the hearing.

---

[3] Lydia House is an Omaha, Nebraska shelter home for homeless persons.

As we have stated numerous times, children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," this patience has been built into the statutory scheme of chapter 232. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing then Iowa Code section 232.116(1)(e)). Consequently, "[t]ime is a critical element," and parents simply "cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *See C.B.*, 611 N.W.2d at 495. At some point, as is the case here, the rights and needs of the children must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 299 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification.

At the time of the termination hearing, the children had not been in the mother or father's care for some seventeen months. Insofar as both the mother and father suggest they need a little additional time before the children could be returned to them, "[w]e have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998);

*see also* Iowa Code § 232.116(2).  We conclude a grant of additional time for the mother and father to work toward reunification is not justified here.

Having reviewed the record de novo, we unequivocally agree with the juvenile court's conclusion:

> The final issue is to whether the children can be returned to the custody of either parent.  As already noted, it has been determined that [the father] is not able to assume custody now or in the near future. . . .  [The mother] has admitted she is unable to resume care of the children at this time but requests additional time in order to get her life settled.  As noted, the children have been out of their parent's care for the last sixteen months.  They have never reunified with either parent for any period of time during this time span.  During this period of time, [the mother] has had the same problems, i.e., homelessness, mental health issues and substance abuse issues.  Since the termination hearing was continued to a new scheduled date, [the mother] had been at Lydia House and left only to return shortly before the termination hearing.  She testified she left because she was depressed and while she was gone, she testified she was homeless and used illegal substances.  This court believes the children need permanency and can't continue to put their lives on hold for their parents to straighten out their lives.  This Court finds the allegations under Iowa Code 232.116(1)(f) as the same relate to the parental rights between [the children] and their [mother and father] have been met by clear and convincing evidence.

Although the mother and father maintain termination is not in the best interest of the children, we conclude the record demonstrates otherwise.  In making this determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]."  Iowa Code § 232.116(2).  The children are doing well in their current placement with their maternal grandmother who is interested in adopting.  The case worker testified, "It's gone well.  The children are happy and stabilized.  They are participating in social activities, school, counseling, and supportive

services." Asked whether instead of termination she considered the possibility of a guardianship being established with the children's grandmother, the case worker said she considered it but did not feel it was in the children's best interest. She believed that "[g]iven the ages of the children and their need for permanency" "it's in their best interest to be adopted by their maternal grandmother." We are not tempted to tinker with the children's progress made and stability gained. Taking into account the relevant factors, we agree with the juvenile court that a guardianship does not provide the children with permanency and that the children's best interests are served by severing their legal ties with the mother and the father. Furthermore, we see no evidence the bonds are so strong as to outweigh the children's need for permanency, thus the section 232.116(3) "closeness-of-the-parent-child-relationship" exception will not prevent the termination. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Accordingly, we affirm the juvenile court's order terminating the mother's and the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**